Case 2:25-cv-11135-SPG-PVC   Document 1   Filed 11/20/25   Page 1 of 17   Page ID #:1

**BRODSKY SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
Kyle D. Auchinleck, Esquire (SBN 350862)
kauchinleck@brodskysmith.com
9465 Wilshire Boulevard, Suite 300
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAISAL NABER,<br><br>Plaintiff,<br><br>vs.<br><br>TRUECAR, INC., BARBARA CARBONE, JANTOON REIGERSMAN, BRENDAN HARRINGTON, FAYE IOSOTALUNO, and DIEGO RODRIGUEZ,<br><br>Defendants. | **Case No.:**<br><br>**Complaint For:**<br><br>(1) Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Faisal Naber ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1. Plaintiff brings this stockholder action against TrueCar, Inc. ("TrueCar" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of

- 1 -
COMPLAINT

the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Fair Holdings, Inc ("Fair Holdings") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a October 15, 2025, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Fair Holdings will acquire the Company in an all-cash, go-private transaction at $2.55 per share, or an equity value of approximately $227 million.

3. Thereafter, on November 13, 2025, the Company filed a Preliminary Proxy Statement on Form PREM14A with the SEC in support of the Proposed Transaction (the "Proxy Statement").

4. The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For example, certain Company executives are entitled to severance packages, often referred to as "golden parachute" packages, entitling same to millions of dollars not shared by Plaintiff and other Company common stockholders.

5. The Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to vote in favor of the Proposed Transaction and is thus in violation of the Exchange Act. As detailed below, the Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for TrueCar, provided by TrueCar management to the Company Board, and the Board's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Morgan Stanley if any, and provided to the Company.

6. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.

**PARTIES**

7. Plaintiff is a citizen of California, and at all times relevant hereto, has been an TrueCar stockholder.

8. Defendant TrueCar operates as an internet-based information, technology, and communication services company in the United States. The Company is incorporated in Delaware and has its principal place of business at 225 Santa Monica Blvd., 12th Floor, Santa Monica, CA 90401. Shares of TrueCar common stock are traded on the NASDAQ Capital Markets under the symbol "TRUE."

9. Defendant Barbara Carbone ("Carbone") has been chair of the Company Board at all relevant times.

10. Defendant Jantoon Reigersman ("Reigersman") has been a director of the Company at all relevant times. In addition, Defendant Reigersman serves as the Company's Chief Executive Officer ("CEO") and President.

11. Defendant Brendan Harrington ("Harrington") has been a director of the Company at all relevant times.

12. Defendant Faye Iosotaluno ("Iosotaluno") has been a director of the Company at all relevant times.

13. Defendant Diego Rodriquez ("Rodriguez") has been a director of the Company at all relevant times.

14. Defendants identified in ¶¶ 9 - 13 are collectively referred to as the "Individual Defendants."

15. Non-Party Fair Holdings operates as a holding company providing automotive digital retail and finance solutions through its subsidiaries.

**JURISDICTION AND VENUE**

16. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange

Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

17. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company maintains its headquarters in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

19. TrueCar operates as an internet-based information, technology, and communication services company in the United States. The company operates its platform on the TrueCar website and mobile applications. Its platform enables users to obtain market-based pricing data on new and used cars, and to connect with its network of TrueCar certified dealers. It also provides TrueCar Access, which offers trade and payments solutions; and Sell Your Car and Trade solutions gives consumers information on the value of their trade-in vehicles and enables them to obtain a guaranteed trade-in price before setting foot in the dealership.

*The Flawed Sales Process*

20. As detailed in the Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company.

21. The Proxy Statement fails to disclose why the Company would agree to a deal that limits the number of parties the Company can solicit superior offers from during the Go Shop

1  period.

2  22.  The Proxy Statement fails to disclose why the Company did not provide its shareholders with a Schedule 13E-3.

23.  The Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Fair Holdings, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

24.  Further, the Proxy Statement fails to adequately disclose any and all of the communications regarding post-transaction employment during the negotiation of the underlying transaction which must be disclosed to stockholders.

25.  It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

**The Proposed Transaction**

26.  On October 15, 2025, TrueCar issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

> SANTA MONICA, Calif., Oct. 15, 2025 /PRNewswire/ -- TrueCar, Inc. (NASDAQ: TRUE), one of the most recognized and trusted automotive digital marketplace brands, today announced it has entered into a definitive agreement pursuant to which Fair Holdings, Inc. ("Fair Holdings"), an entity led by TrueCar founder Scott Painter, will acquire the Company in an all-cash, go-private transaction at $2.55 per share, or an equity value of approximately $227 million based on current basic shares outstanding.
>
> Fair Holdings, Inc. has informed the Company that it is negotiating with various financial and strategic investors to syndicate the financing of this transaction with equity investments. This group is expected to comprise seasoned leaders and institutions across automotive retail, finance, and technology (the "Syndicate"), which are integral to Fair Holdings' operating plan and bring the expertise to scale TrueCar's business. The proposed Syndicate is expected to reflect a unique blend of dealer, data, fintech, and mobility experience partners, united around a shared commitment to supporting TrueCar as the most transparent and trusted platform in auto retail.

"Through this transaction, we are pleased to deliver compelling value to TrueCar stockholders," said Barbara Carbone, Chair of the TrueCar Board of Directors. "The Board unanimously approved this transaction after a thorough and careful evaluation of potential value creation opportunities, and we are confident it is in the best interest of TrueCar stockholders and other stakeholders."

Jantoon Reigersman, Chief Executive Officer of TrueCar, said, "This transaction is a win-win for TrueCar, our investors, our affinity partner network, Certified Dealers and car buyers. The proposed Syndicate would bring deep operational experience, industry insight, and long-term commitment to innovation, which should help TrueCar in its next chapter. Today's announcement is possible because of the hard work and dedication of our talented team, and I am confident the outstanding employees of TrueCar will continue to drive the Company's success."

Upon completion of the transaction, Scott Painter will return as Chief Executive Officer, with a relentless focus on achieving profitable growth, innovation, and renewed alignment with the automotive industry.

"Our decision to acquire TrueCar is driven by the strength of its network of 8,500 franchised and independent dealers, many of whom are among the most forward-thinking in the country," said Painter. "These are dealers who know how to leverage technology, upfront pricing, and customer trust to serve buyers. I've always believed that partnerships and brand alignment are central to creating value for both dealers and customers, and this principle has long been at the heart of TrueCar's offerings."

"TrueCar was created to add value and transparency to the car shopping experience, and that mission remains central to our plan," continued Painter. "The Syndicate that we are assembling would combine the best of the retail automotive, finance, and technology worlds. Together, we intend to bring capital, operating expertise, and a shared conviction in TrueCar's future as a trusted platform that serves both consumers and dealers with fairness and transparency."

TrueCar has always partnered with revered brands that connect relevant in-market car shoppers to a trusted network of dealers committed to transparency and innovation to deliver an exceptional customer experience.

*Transaction Details*

The transaction was unanimously approved by the TrueCar Board of Directors following the conclusion of an extensive strategic review process initiated in late 2024, which included discussions with a number of potential strategic and financial counterparties. The strategic process was overseen by TrueCar's Board of Directors with the assistance of TrueCar's external advisors.

The transaction is expected to close in the fourth quarter of 2025 or early 2026 and includes a standard 30-day "go-shop" period expiring at 11:59 p.m. Pacific Time on November 13, 2025. Completion of the transaction is subject to approval by TrueCar stockholders, receipt of regulatory approvals, if necessary, and satisfaction of customary closing conditions. Upon completion of the transaction, TrueCar's shares will no longer trade on the Nasdaq Global Select Market.

The transaction is being financed by a combination of an equity commitment from an affiliate of a large, innovative dealer group and cash on the Company's balance sheet. As noted above, the parties intend to raise additional capital from the Syndicate to finance a portion of the purchase price prior to closing. The buyer has agreed to pay a reverse termination fee to TrueCar if it fails to complete the transaction and in other customary circumstances, and the Company's other enforcement rights are subject to the receipt of an additional $60 million in financing commitments by the Syndicate. However, there can be no assurance that this additional financing will be secured.

TrueCar's largest collective stockholder, Caledonia (Private) Investments Pty Limited and Caledonia US, LP, has committed to vote in favor of the transaction.

*Potential Conflicts of Interest*

27.     The breakdown of the benefits of the deal indicates that TrueCar insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of TrueCar.

28.     Company insiders currently own large illiquid amounts of Company Shares all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company as follows:

| me of Beneficial Owner | Number of Shares Beneficially Owned | Percent of Shares Outstanding |
|---|---|---|
| **5% Stockholders:** | | |

| | | |
|---|---:|---:|
| Caledonia (Private) Investments Pty Limited and Caledonia US, LP(1) | 18,365,289 | 20.7% |
| United Services Automobile Association(2) | 7,962,245 | 9.0% |
| BlackRock, Inc.(3) | 6,237,051 | 7.0% |
| AutoNation, Inc.(4) | 5,370,000 | 6.0% |
| Glazer Capital, LLC and Paul J. Glazer(5) | 5,336,721 | 6.0% |
| *Named Executive Officers and Directors:* | | |
| Jantoon E. Reigersman(6) | 1,240,391 | 1.4% |
| Oliver M. Foley(7) | 101,701 | * |
| Jill S. Angel(8) | 122,798 | * |
| Jeffrey J. Swart(9) | 945,988 | 1.1% |
| Jay J. Ku(10) | 129,260 | * |
| Barbara A. Carbone(11) | 259,073 | * |
| Faye M. Iosotaluno(12) | 237,680 | * |
| Brendan L. Harrington(13) | 332,877 | * |
| Diego A. Rodriguez(14) | 34,246 | * |
| All current executive officers and directors as a group (8 persons)(15) | 3,274,754 | 3.7% |

29. Additionally, Company insiders currently own large amounts of Company RSUs, and Company PSUs, some of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company as follows:

| | Value of Vested Company RSUs ($) | Value of Company PSUs($)(a) |
|---|---:|---:|
| Mr. Reigersman | $2,256,284 | $1,238,174 |
| Mr. Foley | $ 666,101 | $ 723,208 |
| Ms. Angel | $ 630,676 | $ 573,992 |
| Mr. Swart | $ 520,106 | $ 583,011 |

| Mr. Ku | — | $ 143,554 |

30. Further, certain employment agreements with certain TrueCar executives entitle such executives to severance packages, should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant several directors or officers millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

31. **Golden Parachute Compensation**

| Named Executive Officer | Cash ($)(1) | Equity ($)(2) | Perquisites/ Benefits($)(3) | Tax Reimbursement ($) | Other ($) | Total($)(5)(6) |
|---|---|---|---|---|---|---|
| ntoon E. Reigersman *President and Chief Executive Officer* | $2,000,000 | $3,494,458 | $28,641 | — | — | $5,523,100 |
| iver M. Foley *Chief Financial Officer* | $ 333,333 | $1,389,310 | $27,144 | — | — | $1,749,787 |
| l S. Angel *Chief Operating Officer* | $ 400,000 | $1,204,668 | $32,573 | — | — | $1,637,241 |
| ffrey J. Swart *EVP, General Counsel and Secretary* | $ 400,000 | $1,103,118 | $22,734 | — | — | $1,525,852 |
| y J. Ku(4) *Former Chief Revenue Officer* | — | $ 143,554 | — | — | — | $ 143,554 |

32. The Proxy Statement fails to adequately all communications regarding post-transaction employment during the negotiation of the underlying transaction. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

33. Thus, while the Proposed Transaction is not in the best interests of TrueCar, Plaintiff, or Company stockholders, it will produce lucrative benefits for the Company's officers

and directors.

***The Materially Misleading and/or Incomplete Proxy Statement***

34.     The TrueCar Board caused to be filed with the SEC a materially misleading and incomplete Proxy Statement that, in violation the Exchange Act, fails to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

35.     The Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Proxy Statement fails to disclose:

  a.  Why the Company agreed to a deal that limits the number of parties the Company can solicit superior offers from during the Go Shop period;

  b.  Why the Company did not provide its shareholders with a Schedule 13E-3;

  c.  Whether the confidentiality agreements entered into by the Company with Fair Holdings differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

  d.  All specific conditions under which any standstill provision contained in any confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Fair Holdings, would fall away; and

  e.  Any and all of the communications regarding post-transaction employment during the negotiation of the underlying transaction which must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning TrueCar Financial Projections*

36. The Proxy Statement fails to provide material information concerning financial projections for TrueCar provided by TrueCar management to the Company Board and Morgan Stanley and relied upon by Morgan Stanley in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

37. Notably, the Proxy Statement reveals that as part of its analyses, Morgan Stanley reviewed: "certain financial projections prepared by the management of TrueCar."

38. The Proxy Statement should have, but fails to provide, certain information in the projections that TrueCar management provided to the Company Board and Morgan Stanley. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

39. With respect to the *Management Projections*, the Proxy Statement fails to disclose:
    a. Regarding the *July 2025 Management Projections*, disclose:
        i. Revenue, including the inputs, metrics, and assumptions used to determine same;
        ii. Adjusted EBITDA, including the inputs, metrics, and assumptions used to determine same;
        iii. Capital Expenditures, including the inputs, metrics, and assumptions used to determine same; and
        iv. Unlevered Free Cash Flow, including the inputs, metrics, and assumptions used to determine same.

      b.  Regarding the *October 2025 Management Projections*, disclose:

          i.  Revenue, including the inputs, metrics, and assumptions used to determine same;

          ii.  Adjusted EBITDA, including the inputs, metrics, and assumptions used to determine same;

          iii.  Capital Expenditures, including the inputs, metrics, and assumptions used to determine same; and

          iv.  Unlevered Free Cash Flow, including the inputs, metrics, and assumptions used to determine same.

40.    The Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

41.    This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

42.    Without accurate projection data presented in the Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the Morgan Stanley's financial analyses, or make an informed decision whether to vote his shares in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Morgan Stanley*

43.    In the Proxy Statement, Morgan Stanley describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

44. With respect to the *Selected Comparable Company Analysis*, the Proxy Statement fails to disclose:

    a. The Enterprise Value ("EV") for each of the selected comparable companies analyzed;

    b. The specific metrics observed for each of the selected comparable companies analyzed; and

    c. The inputs, metrics, and assumptions used to determine the AV/Adj. EBITDA multiples range of 5.0x to 10.0x utilized.

45. With respect to the *Discounted Equity Value Analysis*, the Proxy Statement fails to disclose:

    a. The inputs, metrics, and assumptions used to determine the AV/ Revenue multiples range of 0.5x to 1.0x utilized;

    b. The inputs, metrics, and assumptions used to determine the AV/Adj. EBITDA multiples range of 5.0x to 10.0x utilized; and

    c. The inputs, metrics, and assumptions used to determine the discount rate of 23.0% utilized.

46. With respect to the *Dividend Discount Analysis*, the Proxy Statement fails to disclose:

    a. The inputs, metrics, and assumptions used to determine the perpetuity growth rates range of 2.0% to 4.0% utilized;

    b. The inputs, metrics, and assumptions used to determine the discount rates of 21.0% to 25.0% utilized; and

    c. the number of fully diluted outstanding shares of Common Stock as of September 30, 202.

47. With respect to the *Broker Price Targets Analysis*, the Proxy Statement fails to disclose:

    a. The specific price targets analyzed; and

   b. The specific Wall Street firms that generated the analyzed price targets.

48. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

49. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public TrueCar stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

50. Plaintiff repeats all previous allegations as if set forth in full herein.

51. Defendants have disseminated the Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

52. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

53. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

54. The Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

55. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

56. The Individual Defendants were at least negligent in filing a Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Proxy Statement not misleading.

57. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

### SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

58. Plaintiff repeats all previous allegations as if set forth in full herein.

59. The Individual Defendants were privy to non-public information concerning the

Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

60. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

61. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of TrueCar's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

62. The Individual Defendants acted as controlling persons of TrueCar within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause TrueCar to engage in the wrongful conduct complained of herein. The Individual Defendants controlled TrueCar and all of its

employees. As alleged above, TrueCar is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: November 20, 2025

**BRODSKY SMITH**

By: *Kyle D. Auchinleck*
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
Kyle D. Auchinleck, Esquire (SBN 350862)
kauchinleck@brodskysmith.com
9465 Wilshire Blvd., Ste. 300
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*